## Bob Jackson v. The State.

Evidence — Certainty. — It is not requisite that circumstantial evidence, to warrant a conviction, must demonstrate the guilt of the accused beyond a possibility of his innocence. If, beyond a reasonable doubt, it convinces the understanding and satisfies the reason and judgment of those who are bound to act upon it, the degree of certainty required by the law is attained.

APPEAL from the District Court of Cherokee.    Tried below before the Hon. P. F. Edwards.

The indictment charged the appellant with the murder of Henry Reynolds, December 8, 1879, by means of a mortal wound inflicted on the head with a blunt and heavy instrument, which was a deadly weapon. The jury found the appellant guilty of murder in the second degree, and assessed his punishment at fifteen years in the penitentiary.

The defendant, the deceased, and most of the witnesses were negroes. The homicide occurred in the vicinity of the International Railroad depot at Jacksonville, where it seems the defendant was a roustabout. The deceased was a wood-chopper, and lived with a negro family about three miles from the town. Monday night, December 8, 1879, his corpse was found on the railroad track. His skull was crushed in several places, apparently by blows with some blunt instrument, though none likely to have inflicted the injuries was found, nor were any foot-prints discovered near the body. A pool of blood was found about ten feet distant, in the direction of the depot, between which and the body was the lime-house referred to in the opinion. Early in the same night the deceased, accompanied by the defendant, and preceded by two other negroes named Johnson and Caver, left an eating-house near the depot, avowing their purpose to go to the lime-house to play cards; and this was the last time he was seen in life by any witness who testified at the trial. Saturday evening, two days prior to the homicide, an altercation arose between the defendant and the deceased at the depot. It ended by the deceased going away, and by the defendant saying that he " had killed two or three d—n niggers, and could kill another." This, however, being an habitual style of talk with the defendant, the witness thought nothing of it at the time.

The theory of the prosecution was, that the body of the deceased was placed upon the railroad track after he had been killed elsewhere. One hypothesis of the defence was, that the fatal injuries were inflicted by a train of cars which

passed after the deceased was last seen by the witnesses. A conductor of the railroad was examined by the prosecution. He had seen the bodies of four or five persons who, while standing on the track, had been struck by the pilot or cow-catcher of the engine, and only one of them remained on the track. He had also seen the bodies of four who were struck while lying on the track ; and, if the track was filled up between the ties, the body would be· rolled in front and the bones crushed.. If the track was not filled between the ties, the body would be crushed and mutilated. If the body was lying on the track, and the head was struck by the pilot, the part struck would, if stationary, be shaved off. If run over, the body and bones would be crushed.

The opinion will be found to recapitulate the most ·significant circumstances inculpatory of the defendant, and there appears to be no occasion for a more detailed account of the testimony adduced, for that purpose. The evidence for the defence presents nothing of a definitely material character, and doubtless the appellant, but for the prowess of his counsel, would have fared· much worse than he has.

*Wilson & Gaines*, for the appellant. It is laid down in some of the books that the *corpus delicti* cannot be established by circumstantial evidence, but that it must be proved by direct evidence. 1 Bishop's Cr. Proc. 1070. The weight of authority, however, is the other way ; but, as Mr. Bishop remarks, " this part of the case should always receive careful attention, and no man should be convicted until it is in some way made clear that a crime. has been committed." 1 Bishop's Cr. Proc. 1071. The true rule seems to be that the *corpus delicti* must be so established as to positively exclude all uncertainty or doubt. *The State* v. *Davidson*, 30 Vt. 377. Our Penal Code, art. 549, provides ·that " no person shall be convicted of any grade of homicide unless the body of deceased, or portions of it, are found and sufficiently identified to *establish the fact of the.killing*."

This is a positive requirement that the *death* must be established by the dead body itself, or portions of it, and in such manner as also to further establish the *fact of the killing* of that body. Circumstantial evidence will not, under this provision, suffice to prove the *death* and the *killing*, as it would were there no such statute.

But should it be considered that it is only necessary to establish the fact of the *death* by the production and identification of the dead body, and that the remaining part of the *corpus delicti* — that is, that the death was caused by the criminal agency of some person — may be established by circumstances, then we contend that the circumstances proven in this case do not prove that Reynolds was killed by any person. The only circumstance tending to prove that deceased came to his death by violence was the wound found upon his hand. It has been well remarked that the inference of violence as the cause of death is not to be hastily drawn from mere external appearances, however impressive and apparently decisive they may seem. 2 Beck's Med. Jur. 3, 4. The supposition of accident, as well as the operation of natural causes, are possibilities which must be taken into view in every case, and be satisfactorily excluded before the conclusion of criminal violence as the cause of death is to be adopted as probable. Best on Pres. 205 ; Wills on Cir. Ev. 168. In this case the dead body was found upon a railroad track a few minutes after a train of cars had passed over that track. It had rained that night, and yet no human foot-prints were found about the body. No weapon was found either, and no indications of any struggle.

The theory of the State is, that Reynolds was murdered and his dead body placed upon the track after the train passed. The theory of the defence is, that Reynolds was killed accidentally, or died from a natural cause ; or that, if murdered, it was the act of some other person than the defendant, and that the train passed over the dead body, or

that the body was not upon the track when the train passed. We respectfully submit that the theory of the defence is as reasonable and as probable, from the evidence, as that advanced by the State, and that the State has failed to establish, in the manner required by law, the corner-stone of the prosecution — that is, the *corpus delicti*.

But if the *corpus delicti* has been satisfactorily established, does the evidence show to moral certainty, beyond strong probability or suspicion, and to the exclusion of every reasonable doubt, that Bob Jackson, the defendant, was the perpetrator of the crime? We contend that it certainly does not. The inculpatory circumstances relied upon to prove the guilt of the defendant are but few, and are of the weakest and most unsatisfactory nature.

Taking them all together, do they fill the measure of the law and establish the guilt of this defendant? To our minds they do not. To our perception, the case is left by this evidence enveloped in darkness and mystery. Reynolds may have been murdered; this is strongly probable, but not certain. The defendant may have murdered him; this is barely probable, but altogether uncertain. Bill Johnson, Jim Cox, or George Caver may have murdered him. This is probable, and entirely consistent with all the evidence in the case; and, looking to this evidence, we are forced to the conclusion that if Reynolds was murdered, the three persons last named were his murderers. This hypothesis, it seems to us, is at least as reasonable and as strongly supported as the one which assumes the guilt of this defendant.

We therefore respectfully and urgently contend that the verdict of the jury was not warranted by the evidence, and was contrary to law, and that the defendant should be awarded a new trial. In this connection we will invite the attention of the court to the following authorities not hereinbefore cited: *Barnell* v. *The State*, 5 Texas Ct. App. 113; *Rodriguez* v. *The State*, 5 Texas Ct. App. 256; *Harrison* v. *The State*, 6 Texas Ct. App. 42; *Jones* v. *The State*, 4

Texas Ct. App. 436 ; *Grant* v. *The State*, 3 Texas Ct. App.
1 ; *Tollett* v. *The State*, 44 Texas, 95.

The special charge given by the court at the request of
the district attorney, while correct as an abstract proposition
of law, was, we think, wholly unwarranted by any evidence
in the case.  No such issue was raised by the evidence.
There is not a particle of evidence, as far as we are able to
understand the case, to base this special charge upon.
It may be argued that if there was no evidence to base this
charge upon, then the verdict of the jury could not have
been influenced by it.  In reply to this, we say that the law
accords to a defendant the right to have the law as *appli-
cable to the facts of his case* given in charge to the jury, and
if this has not been done, it cannot be said that he has had a
fair and impartial trial.  We cannot look into the minds of
twelve jurors and ascertain the influences which bring those
twelve minds to a verdict.  This special charge may have
been the sole foundation for the verdict in this case, and if
it was, there is certainly no evidence to support it.  Upon
this point we call attention to the following decisions of this
court : —

"The court should not instruct upon matter not put in
issue by the evidence." *Gose* v. *The State*, 6 Texas Ct.
App. 121.

"However correct as an abstract proposition, a special
charge should be refused if inapplicable to the case."
*Bejarano* v. *The State*, 6 Texas Ct. App. 265.

"Special charges should be refused unless warranted by
the evidence." *Hatch* v. *The State*, 6 Texas Ct. App. 384.

"A charge on any apparent issue is not appropriate
unless some evidence pertinent to the issue has been ad-
duced." *Shultz* v. *The State*, 5 Texas Ct. App. 390.

"Other law than that applicable to legitimate deductions
from the evidence should not be given in charge to the jury,
because calculated to mislead." *Pugh* v. *The State*, 2 Texas
Ct. App. 539.

This special charge is objectionable in another respect. It assumes as a fact that a fatal blow was stricken upon the deceased, which resulted in his death. This settles in the affirmative, adversely to the defendant, one of the material issues in the case, and upon which issue the evidence is by no means clear. It virtually assumes that the *corpus delicti* has been established by the evidence. If there was no other objection to this conviction than this special charge, we respectfully contend that it alone would demand a reversal of this case. See *Searcy* v. *The State*, 1 Texas Ct. App. 440, where it is held that a charge assuming a fact as proved was erroneous.

*Priest, Bonner & Gibson,* also for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

WHITE, P. J.  A special instruction was given the jury at the request of counsel for the prosecution, as follows: " If the jury believe from the evidence, beyond a reasonable doubt, under the rules given heretofore, that the defendant participated in and was present at the murder of Henry Reynolds, consenting to the same, and knowing and agreeing with others that the same should be done, it is immaterial whether he struck the fatal blow or blows which resulted in the death of deceased (if he died) ; under such circumstances he would be a principal, and as guilty as if he had actually inflicted the wounds." The legal proposition enunciated is not questioned ; but it is denied that there was any testimony warranting, much less calling for such instruction, and on this account it is zealously claimed that the instruction was not only erroneous, but also calculated to mislead the jury.

An examination of the evidence will, we think, show that the instruction was not inapplicable to one view of the facts. Just before the killing, several parties agreed to go to the

lime-house to play cards.   Johnson and Caver left together, and shortly afterwards the deceased and defendant.   The dead body was found a short distance from the lime-house. Its position when found, and the other physical facts disclosed, might legitimately indicate that the murder was not in fact committed at the point on the railroad track where it was lying when discovered.   A reasonable inference deducible from the surroundings was, that the murder was committed elsewhere than at that particular spot, and that the body was afterwards carried to and deposited where found.   If so, then others must have aided in its removal, since it could scarcely have been conveyed from one place to another by defendant alone, without leaving other signs and different evidences of that fact upon the ground.   Emmet McPherson, who was one of the first to examine the body after it was discovered, says "he had the appearance, in every way, of a body laid down where we found him." From the surroundings, the jury might naturally conclude that other parties were connected with defendant in the transaction, and if so, it was the duty of the court to inform them of the law with reference to defendant's liability for acts committed in connection with other guilty participants.

The evidence is circumstantial; and in an able brief, accompanied by a most forcibly written argument, it is insisted by counsel for appellant that, under the law and the facts, it is wholly insufficient to sustain the verdict and judgment. We have spared no pains in considering it in connection with the views of counsel, and we are constrained to say that we differ with them in the conclusions arrived at.   This defendant and deceased had a difficulty on Saturday night— about a trifling matter, it is true, but one notwithstanding which seems to have aroused defendant to an extent that caused him to indulge in serious threats against the deceased. This may not have been the only motive for the homicide; still, it shows that bad feeling had existed but recently before between the parties.   Defendant is the last person seen on

Monday night with deceased, going in the direction of the fatal spot where the body is afterwards found. His subsequent conduct is strange, if not inexplicable. When he returns to his boarding-house, he asks for water, and makes a noise as though he was washing. Next morning he trades clothing with Ligon, and blacked his boots, a thing he had not done in the five or six weeks he had boarded with the witness. He did not want any breakfast, and only drank a cup of coffee. He said he could not pay Roxie what he owed her, because he got broke the night before, and that the boys had won all his money ; but he buys whiskey, and paid for beef for the witness. Afterwards, on the same morning (Tuesday), at Maddox's, about dinner-time, he takes out the pocket-book identified as belonging to, or exactly like one owned by the deceased, and after taking eight or nine dollars out of it, gives it to Martha Garrett as a present. When asked where he got so much money, he said he " beat a d——n nigger out of it last night." After the inquest was held, he was anxious to know of the witness Pearce what he had sworn, and said, " If any of you d——n niggers swear against me about this matter, I'll kill you." On Tuesday night he wanted to leave and go to his family in Palestine. Upon these and other facts narrated by the witnesses, we are of the opinion the jury were warranted in coming to the conclusion, beyond a reasonable doubt, that whatever other parties, if any at all, may have had a hand in the murder, this defendant was present and participated in the deed, if in fact he did not commit it alone and unaided.

Counsel indulge in some very ingenious hypotheses, based upon the facts, in their effort to show that there are reasonable probabilities, as well as possibilities, that others might have committed the deed, and that the jury should have entertained a reasonable doubt as to defendant's guilt. The plausibility of the argument does great credit to the skill and ability of the learned counsel. But there were no inculpatory facts pointing to other parties, and, as we think, enough

against this defendant to establish most satisfactorily and certainly his guilt, even under the special instruction requested by defendant and given by the court, in these words : " Before you can convict on circumstantial evidence alone, it devolves on the prosecution to establish defendant's guilt, — that is, to identify him with the killing, — which can be done by a chain of circumstances. Each link of the chain tending to connect the defendant with the killing must be proven to your satisfaction, beyond a reasonable doubt ; and when there is a link wanting in the chain, or not so established beyond a reasonable doubt, in identifying defendant with the killing of Henry Reynolds, the jury will acquit.   To justify a conviction upon circumstantial evidence alone, the facts relied on must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of guilt.   It is not sufficient that circumstantial testimony tends closely to prove the fact and cast suspicion on defendant, and establish a probability that defendant did the deed, but the evidence must exclude the belief that he did not, and that some other person might have done it, or that deceased came to his death by some other means."

The argument of learned counsel, carried to its legitimate extent, would seem to demand that the State, in a case of circumstantial evidence, was bound to establish that it was impossible that the accused could be innocent, and that nothing short of this would answer the demands of the law. Such a degree of certainty in proof is scarcely attainable, and never requisite in any case.   " To say that the proof in any case must show the innocence of the accused to be impossible, would necessarily be to say that it must demonstrate his guilt, since nothing short of such demonstration could exclude the possibility of innocence.   The degree of certainty upon which the jury are justified in convicting, termed moral certainty, does not amount to demonstrative certainty of guilt, or certainty which excludes the possibility

of innocence ; on the contrary; it supposes and entirely consists with the possibility of innocence, and is itself nothing more than the comparatively measurable, limited degree of certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it — a certainty of guilt, not indeed beyond all possible or imaginary doubt, but beyond all reasonable doubt.'' *The People* v. *Brotherton*, 47 Cal. 388 ; *Irvin* v. *The State*, 7 Texas Ct. App. 109 ; 1 Greenl. on Ev., sect. 1.

The evidence being sufficient, and no material error having been made to appear, we are of opinion that the judgment should be affirmed, and it is affirmed.

*Affirmed.*